**FIRST NATIONAL BANK OF TOPEKA, KANSAS, as Administrator of the Estate of Robert Lee Graham, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. T-3327.**

United States District Court
D. Kansas.
Aug. 20, 1964.

---

Jacob Dickinson, of Dickinson, Aiken, Crow, Skoog & Honeyman, Topeka, Kan., for plaintiff.

Robert W. Ryan, Jr., Tax Div., Dept. of Justice, Washington, D. C., Newell George, U. S. Atty., Topeka, Kan., for defendant.

TEMPLAR, District Judge.

This is an action to recover estate taxes paid under protest by plaintiff. The Commissioner of Internal Revenue assessed the Estate of Robert Lee Graham, Deceased, in the amount of $72,-496.47 plus interest of $14,232.14 for a total amount of $86,728.61. The amount of the assessment of the Commissioner results from a disallowance of various items as follows:

(1) Disallowance to the marital deduction in the amount of $116,584.45 to the widow of Robert Lee Graham because

(a) An amount paid by the widow of Robert Lee Graham in settlement of litigation with the minor children of her deceased husband by a previous marriage allegedly cannot be claimed to have passed to the surviving spouse because it was encumbered by the settlement agreement. Therefore the estate, according to the commissioner, should not be allowed to include the amount paid by the widow in the total amount of the property subject to the marital deduction; and

(b) The widow's marital deduction, according to the Commissioner, is subject to a proportionate share of the federal estate tax before the computation of the widow's marital deduction.

(2) Disallowance of the administrator's attorney's fee of $100,000 and the reducing of same to $30,000 because allegedly the bulk of the work performed by the attorney was on behalf of the widow and not on behalf of the estate as a whole.

On April 29, 1964 a pre-trial conference was held and it was agreed that the points raised by the Commissioner's deficiency assessment could be determined as a matter of law from the pleadings and exhibits in the file. After argument on the issues counsel were given 45 days to file briefs. The briefs have been filed and they have been considered.

Robert Lee Graham died intestate, a resident of Shawnee County, Kansas, on March 21, 1957. He left surviving him as his heirs at law his widow, Carolyn M. Graham, who was his second wife, and four children; three by a previous marriage—Robert Lee Graham, Jr., DeCourcy W. Graham and Victoria M. Graham, all minors, and one by the second marriage, Cynthia Lynn Graham, also a minor. The estate of the decedent consisted primarily of the corpus of a trust estate held by the Union Trust Company of Baltimore, Maryland under a trust agreement with the decedent dated May 21, 1949, the entire trust estate being payable, in the event of death, to the administrator of the estate of the decedent. Certain other trust estates created by the mother of the decedent, dated February 19, 1944, and July 15, 1948, were also held by a trust company of Baltimore, Maryland, in which the decedent held a life interest which expired by reason of his death and under which, among other persons, the four children of Robert Lee Graham became beneficiaries upon the death of Robert Lee Graham.

Following the death of Robert Lee Graham, extended litigation, both in Kansas and in Maryland, took place and as a result the First National Bank of Topeka, as administrator of the estate of Robert Lee Graham, and plaintiff herein,

secured delivery and possession of the corpus of the trust estate created by Robert Lee Graham and held by the Union Trust Company. The appraised value of the estate totals approximately $1,200,000.00.

In securing the corpus of the Maryland trust estate, a memorandum of settlement agreement was entered into between the First National Bank of Topeka, as Administrator of the Estate of Robert Lee Graham, deceased; Carolyn M. Graham, individually; Carolyn M. Graham, as Guardian of the person and estate of Cynthia Lynn Graham, a minor; Maryland Trust Company of Maryland as Guardian of the estates of Robert Lee Graham, Jr., DeCourcy W. Graham and Victoria M. Graham, minors; Maryland Trust Company of Baltimore, Maryland as Petitioner for Letters of Administration of the Estate of Robert L. Graham, deceased; and Elizabeth Thom Graham, individually and as mother, natural guardian and next friend of Robert Lee Graham, Jr., DeCourcy W. Graham and Victoria M. Graham, minors. The Union Trust Company, trustee of the decedent's May 21, 1949 trust, was not a signatory to this agreement.

The agreement insofar as pertinent to the issues before the Court at this time provides as follows:

"6. That the marriage of Robert Lee Graham and Carolyn M. Graham formerly Carolyn M. Vigneron is in all respects valid and regular *and will not be questioned or challenged* and all parties further agree that Carolyn M. Graham is the lawful widow of Robert Lee Graham and *is entitled to share in his estate as such.*

"7. All parties agree that Cynthia Lynn Graham is a lawful child of Robert Lee Graham and entitled to share in his estate as such and is in all matters and things including all Trust Estates herein mentioned and entitled to take part as such child.

"13. It is agreed specifically between Carolyn M. Graham, individually, Carolyn M. Graham as Guardian of the person and estate of Cynthia Lynn Graham, minor, the Security First National Bank of Los Angeles, California, and the Maryland Trust Company of Baltimore, Maryland as Guardian of the estates of Robert Lee, Graham, Jr., DeCourcy W. Graham and Victoria M. Graham, and Elizabeth Thom Graham both individually and as mother and natural guardian and next friend of said three minors that in addition to the ⅛ share of the Estate of Robert Lee Graham, deceased, to which each said three minors is entitled under the laws of Descent and Distribution of the State of Kansas the said three minors shall be entitled to receive collectively a sum equal to $\frac{1}{12}$ of the net distributable Estate of Robert Lee Graham, deceased, before the assessment and payment of taxes thereof which sum to the extent not allowed as a claim against the Estate of Robert Lee Graham or otherwise provided for shall not be treated as a part of the distributable share of such minors and not taxed as such *but shall constitute a payment by said Carolyn M. Graham, individually* and as guardian of the person and estate of Cynthia Lynn Graham, minor; provided *however, that any additional tax burden which shall fall upon said Carolyn M. Graham either individually or as guardian shall be applied as a credit against the said amount of the payment.* It is expressly understood that there is now pending in the Estate of Robert Lee Graham a claim on be-

half of said minors which claim if allowed shall be applied rateably to the reduction of the obligation herein provided together with any other credits thereon which may hereafter be agreed upon between the parties. It is the understanding of the parties that at the time of making this Agreement that the Estate of Robert Lee Graham, deceased, will approximate $1,200,000.00 and that the sum equal to ½ herein referred to will approximate $100,000.00 but is understood that the actual determination of said sum will be arrived at by an application of the fraction ½ as herein provided." (Emphasis supplied.)

It is the contention of the United States that because allegedly the widow, Carolyn M. Graham, never received this $100,000, the amount subject to the marital deduction of the Estate should be reduced by $100,000. It is the government's theory that the marital deduction must be from "any interest in property *which passes* or has passed from the decedent to his surviving spouse."

Notwithstanding the provisions of the memorandum of agreement which states specifically that Carolyn M. Graham cannot be made to pay any additional tax as a result thereof, this Court feels that the character of the interest received by Carolyn M. Graham is determinative of the issue. After the death of Robert Lee Graham, it was necessary to finally determine just where the estate of Robert Lee Graham was to be probated—Maryland or Kansas. Obviously, Robert Lee Graham was domiciled in Kansas with his second wife and the child at the time of his death. His property was located in both Kansas and Maryland. It might be said that one procedure to be followed under such circumstances would be for Kansas to have probated the primary estate and for ancillary proceedings to be opened for probate of the Maryland

Estate. However, the pertinent Maryland trust instrument provided that all of this property was to be paid to the Estate of Robert Lee Graham and as a matter of fact the primary Estate of Robert Lee Graham was in Shawnee County, Kansas. The Kansas people—plaintiff herein, and Carolyn M. Graham, and Cynthia M. Graham—most certainly were entitled to have the estate probated in Kansas. In order to expedite the probate proceedings in Kansas the parties entered into this agreement. By the terms of this agreement, Carolyn M. Graham agreed to pay individually, by herself personally, independent of the estate as such, to the three minor children of her husband's first marriage the approximate sum of $100,000 provided she did not suffer any additional tax burden. Because the final determination of this amount due the three children cannot be made until there is a determination of final tax liability, it seems to this Court to be immaterial to Carolyn M. Graham just what ruling is made. However, to aid the Commissioner in making its final determination of tax liability, the Court will consider the character of the interest in the property received by Carolyn M. Graham.

At the outset all the property is under the jurisdiction of the Probate Court of Shawnee County, Kansas, and that Court will have no alternative but to apply Kan.G.S.1949, 59–504 which provides:

" * * * If the decedent leaves a spouse and a child, or children, or issue of a previously deceased child or children, *one-half of such property shall pass to the surviving spouse.*" (Emphasis supplied.)

This one-half interest is subject to the homestead right, certain allowances, and the payment of reasonable funeral expenses, expenses of last sickness and costs of administration, taxes and debts. (Kan.G.S.1949, 59–502.) However, because of the nature and purpose, hereinafter discussed, of the marital deduction, the taxes referred to in 59–502 have no application insofar as the federal estate tax is concerned. There-

fore, the statutes, sections 504 and 502, make it abundantly clear that at the time of the death of Robert Lee Graham the widow, Carolyn M. Graham, had a one-half interest in the property free and clear of all encumbrances for federal estate tax purposes and she had a right to do with it as she pleased; she had no encumbered or terminable interest. In the last analysis, the widow, when she entered into the agreement set forth above was merely attempting to buy her peace with *her* money. As this Court stated in Coleman v. United States, D. C., 221 F.Supp. 39 (1963):

> "The Court fails to find anything evil in efforts to settle litigation, nor *anything reprehensible in consider-ing the manifest ramifications of tax law, and their application while so doing*. This Court has followed a policy of encouraging negotiations in litigation designed to settle issues of fact and to determine questions of law involved even though a complete settlement of a case may not always be effected. \* \* \* "

Our Kansas Supreme Court, in Brent v. McDonald, 180 Kan. 142, at page 152, 300 P.2d 396, at page 404, stated:

> " \* \* \* family settlements of this character are favorites of the law and will be enforced when un-connected with fraud or gross in-justice and are freely and fairly en-tered into, and, when so made, are given a liberal construction and should not be disturbed by those who entered into them. \* \* \* "

This agreement entered into by the parties seems reasonable under the cir-cumstances because it no doubt concluded a bitter controversy and, in addition, ex-pedited the administration of the estate. Certainly no penalty should be placed upon the members thereto for attempting to settle their differences out of court.

It is true that 26 U.S.C.A. § 2056(b) (4) (B) provides in effect that in val-uing the interest received by the sur-viving spouse the interest can not be en-cumbered at the time of the passing of the interest. But from the pleadings and papers filed in this case, it is apparent that neither at the time of death nor as a direct effect of the death the property was encumbered. The character of the interest in property passing to the sur-viving spouse must be determined to be an unencumbered one-half in fee for fed-eral estate tax purposes.

Of course, Section 20, 2056 (e)–2(d) (1), pertaining to controver-sies involving a will, of the Regulations under the Internal Revenue Code of 1954 is not applicable by its very terms because it refers to a will contest. But the Court must observe that it is State law which creates the taxable legal interests and rights (Morgan v. Commissioner of In-ternal Revenue, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035), and that the government, by its interpreta-tion of regulation [20, 2056(e)–2(d) (1)], is attempting to establish a differ-ent property interest in the surviving spouse and is not taxing a property in-terest created by state law. Notwith-standing, the Court holds, that the regu-lation is not applicable because there is no will contest involved in the matter be-fore it.

Further this Court finds nothing in United States v. Stapf, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 nor in Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 which would cause it to make any contrary conclusion as to the character of the interest passing to the surviving spouse in this case.

In the Stapf case, the question was whether a decedent's estate is allowed a marital deduction, under the similar 1939 Code provision where the bequest to the surviving spouse was on the condition that she convey property of equivalent or greater value to her children. The Court states:

> "The Government contends that, for purposes of a marital deduction, 'the value of the interest passing to the wife is the value of the property given her less the value of the prop-erty she is required to give another

as a condition to receiving it.' On this view, since the widow had no net benefit from the exercise of her election, the estate would be entitled to no marital deduction. Respondents (taxpayers) reject this net benefit approach and argue that the plain meaning of the statute makes detriment to the surviving spouse immaterial.

"Section 812(e) (1) (A) provides that 'in general' the marital deduction is for 'the value of any interest in property which passes * * * from the decedent to his surviving spouse.' Subparagraph (e) then deals specifically with the question of valuation:

" '(E) Valuation of interest passing to surviving spouse. In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection— * * *

" '(ii) where such interest or property is incumbered in any manner, or *where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.'* (This is the exact language used in § 2056(b) (4) (B), I.R.C. of 1954.)

The disputed deduction turns upon the interpretation of (1) the introductory phrase 'any obligation imposed by the decedent with respect to the passing of such interest,' and (2) the concluding provision that 'such * * * obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.'

"The Court of Appeals, in allowing the claimed marital deduction, rea-soned that since the valuation is to be 'as if' a gift were being taxed, the legal analysis should be the same as if a husband had made an *inter vivos* gift to his wife on the condition that she give something to the children. In such a case, it was stated, the husband is taxable in the full amount for his gift. The detriment incurred by the wife would not ordinarily reduce the amount of the gift taxable to the husband, the original donor. The court concluded:

" 'Within gift tax confines the community property of the widow passing under the will of the husband to others may not be "netted" against the devise to the widow, and thus testator, were the transfer inter vivos, would be liable for gift taxes on the full value of the devise.' 309 F.2d 592, 598.

"This conclusion, based on the alleged plain meaning of the final gift-amount clause of § 812(e) (1) (E) (ii), is not supported by a reading of the entire statutory provision. First, § 812(e) allows a marital deduction only for the decedent's gifts or bequests which pass 'to his surviving spouse.' In the present case the effect of the devise was not to distribute wealth to the surviving spouse, but instead to transmit, through the widow, a gift to the couple's children. The gift-to-the-surviving-spouse terminology reflects concern with the status of the actual recipient or donee of the gift. What the statute provides is a 'marital deduction'—a deduction for gifts to the *surviving spouse*—not a deduction for gifts to the children or a deduction for gifts to privately selected beneficiaries. The appropriate reference, therefore, is not to the value of the gift moving from the deceased spouse but to the net value of the gift received by the surviving spouse.

"Second, the introductory phrases of § 812(e) (1) (E) (ii) provide

that the gift-amount determination is to be made 'where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest * * *.' The Government, drawing upon the broad import of this language, argues: 'An undertaking by the wife to convey property to a third person, upon which her receipt of property under the decedent's will is conditioned, is plainly an "obligation imposed by the decedent with respect to the passing of such interest."' Respondents contend that 'incumbrance or obligation' refers only to 'a payment to be made *out* of the property passing to the surviving spouse.' Respondents' narrow construction certainly is not compelled by a literal interpretation of the statutory language. Their construction would embrace only, for example, an obligation *on* the property passing whereas the statute speaks of an obligation *'with respect* to the passing' gift. Finally, to arrive at the real value of the gift 'such * * * obligation shall be taken into account * * *.' In context we think this relates the gift-amount determination to the net economic interest received by the surviving spouse.

"This interpretation is supported by authoritative declarations of congressional intent. The Senate Committee on Finance, in explaining the operation of the marital deduction, stated its understanding as follows:

" 'If the decedent beqqeaths certain property to his surviving spouse *subject,* however, *to her agreement,* or a charge on the property, for payment of $1,000 to X, the value of the bequest (and, accordingly, the value of the interest passing to the surviving spouse) is the value, reduced by $1,000, of such property.' S.Rep. No. 1013, 80th Cong., 2d Sess., Pt.

2, p. 6; U.S.Code Cong.Service 1948, p. 1228. (Emphasis added.)

"The relevant Treasury Regulation is directly based upon, if not literally taken from, such expressions of legislative intent. Treas.Reg.No. 105, § 8147c(b) (1949). The Regulation specifically includes an example of the kind of testamentary disposition involved in this case:

" 'A decedent bequeathed certain securities to his wife in lieu of her interest in property held by them as community property under the law of the State of their residence. The wife elected to relinquish her community property interest and to take the bequest. For the purpose of the marital deduction, the value of the bequest is to be reduced by the value of the community property interest relinquished by the wife.'

"We conclude, therefore, that the governing principle, approved by Congress and embodied in the Treasury Regulation, must be that a marital deduction is allowable only to the extent that the property bequeathed to the surviving spouse exceeds in value the property [such spouse] *is required to relinquish."* (Emphasis supplied.)

It is clear in this case, as this Court has heretofore stated, that the surviving spouse was not obligated by the decedent's death to enter into any family settlement. She could have contested the matter to the bitter end. This Court holds that under the circumstances of this case the surviving spouse is entitled to follow the rule, uniformly allowed with regard to interests other than the widow's allowance, that qualification for the marital deduction must be determined as of the time of death and not as of a later date established by some subsequent event or development. (Bookwalter v. Lamar, 323 F.2d 664 (C.A.8th Cir.); United States v. Mappes, 318 F.2d 508 (C.A.10th Cir.); Commissioner of Inter-

nal Revenue v. Ellis' Estate, 252 F.2d 109 (C.A.3d Cir.); Starrett v. Commissioner, 223 F.2d 163 (C.A.1st Cir.); Estate of Sbicca v. Commissioner, 35 T.C. 96; and Jackson v. United States, (1964) supra.)

The Court concludes, therefore, that the widow inherited one-half of the decedent's property at the time of his death for federal estate tax purposes and that the property she received was not encumbered in any manner which would preclude her from buying her peace in order to avoid protracted litigation, a practice which should be and is encouraged by all courts.

The question of what interest the surviving spouse receives for computation of the marital deduction for federal estate tax purposes in an intestate estate and the question of who has the ultimate burden of paying the federal estate tax must be decided on essentially the same reasoning. The transcending and controlling factor, insofar as this Court is concerned, is the purpose of the marital deduction. I have already determined that under Kansas law the surviving spouse has an unencumbered one-half fee interest in the decedent's property at the time of his death; the remaining question then is whether the one-half of the estate belonging to the widow after deduction of debts and expenses of administration, but without deduction of any portion of the federal estate tax, should be taken as a deduction under the statute, or whether the share of the widow to be deducted should first be diminished by a portion of the federal estate tax.

The State of Kansas has not seen fit to enact any apportionment statute pertaining to federal estate taxes. Further, insofar as this Court has been able to find, there is no Kansas case exactly in point which would conclusively settle the issue of whether the widow is to bear a portion of the federal estate tax. Under such circumstances, this Court must determine what appears to be controlling state law. (See Criqui v. Blaw-Knox Corp., 318 F.2d 811 (10th Cir.)

(1963), United States v. Jones, 229 F.2d 84, 58 A.L.R.2d 778 (10th Cir.) (1956), and Fisher v. Firemen's Fund Indemnity Co. (10th Cir.) (1957), 244 F.2d 194.)

The Government claims that the Kansas law is stated in Kan.G.S.1949, 59–1405 and in Peterson v. Peterson, 173 Kan. 636, 251 P.2d 221 (1952) the net effect of which, it claims, is that the widow takes only a residuary interest in the estate. In determining such residuary interest the government contends, all debts of the estate must first be deducted, including the federal estate tax, and that the burden of the estate tax is, therefore, cast upon the entire estate including the share of the widow. It then claims that "there is no authority whatsoever for the proposition that the surviving spouse is to take one-half of the estate before the imposition of federal estate taxes."

I feel that the Government overlooks the purpose of the marital deduction law and the reason it was inserted in the federal estate tax law. I quote at length from Pitts v. Hamrick, 228 F.2d 486 (4th Cir.) (1955) at page 490:

"* * * Where the estate is to receive the benefit of the deduction of the widow's share from the gross estate in order that that share may be relieved of the burden of the estate tax, as Congress intended,[1] it

"1. The marital deduction provision was inserted in the Revenue Act of 1948, along with the income splitting provision for married couples filing a joint return, to equalize tax advantages in common law and community property states. Its purpose was to permit a surviving spouse to take a portion of the deceased spouse's estate free of the burden of federal estate taxes. See Senate Report No. 1013, 80th Cong. 2d Sess. U.S. Congressional Service 2d Sess. Vol. 2, pp. 1163 et seq. In re Peters' Will, 204 Misc. 333, 88 N.Y.S.2d 142, affirmed 275 App.Div. 950, 89 N.Y.S. 2d 651; Miller v. Hammond, 156 Ohio St. 475, 104 N.E.2d 9; Campbell v. Lloyd, Ohio App., 117 N.E.2d 45; Lincoln Bank & Trust Co. v. Huber, Ky., 240 S.W.2d 89.

would be unfair and unjust to require her share to bear any portion

of that tax; and we find nothing in the law of South Carolina which requires such a result or which would prevent the court from applying equitable principles of apportionment to relieve the share of the widow of this unfair and unjust burden. * * * It is inconceivable here that any part of the estate tax should be attributed to the share of the widow, where the purpose of Congress in allowing the marital deduction was to free the interest of the surviving spouse from the burden of that tax and where the estate receives the benefit of the deduction because of that interest."

This Court had occasion to state in Coleman v. United States, supra, 221 F. Supp. p. 47:

"Moreover, since this case involves the application of the marital deduction, we should not lose sight of the fact that such provision was enacted by Congress in order to place taxpayers in common law states on an equal basis taxwise with taxpayers in community property states. Taxpayers residing in community property states held a great and undeserved advantage over taxpayers who lived in states in which the common law prevailed. Passage of the marital deduction provision was purposely designed to eliminate such discrimination. Many states went so far as to create statutory community property laws to permit their citizens to take advantage of the tax privileges community property laws afforded. Congress, in the passage of the law which made the principle of community property universal taxwise, required, as a condition for its application, that the property passing to a surviving spouse (in the common law states) must vest the spouse with the full and unrestricted title or the power to dispose of it. The interest acquired must not be a so-called 'terminable interest' i. e., any interest less than complete title for the rea-

son that if full title passed to the surviving spouse, the property so received would result in its inclusion in the spouse's estate at the time of death and then be subject to the imposition of estate tax. The purposes and objects of the marital deductions statute should not be ignored in considering the facts of this case."

Two cases—Central Trust Company v. Burrow, (1936) 144 Kan. 79, 58 P.2d 469, and Thompson v. Wiseman, (10th Cir.) 1956, 233 F.2d 734—pertain to residuary estates and to the impact of federal estate taxes. As this Court reads those cases, the rule announced therein is that the burden of federal estate taxes falls upon the residuary estate in the absence of some direction by the testator to the contrary. Neither of these cases are factually in point with the matter before the Court at this time because this Court does not feel that the amount allowed the widow in an intestate proceeding, considering the purpose of the marital deduction, is a residuary estate. Moreover, and most importantly, as was stated in the Wiseman case, supra, the ultimate impact of federal estate tax is determined by state law, and even though the case is not factually in point, when the Kansas Supreme Court had occasion to consider the burden of federal estate taxes in a testate estate in In re Estate of Rooney, (1960) 186 Kan. 200, 349 P.2d 916, it fairly well settled the issue presently before this Court. In the Rooney case, the testator had directed in his will that the federal taxes to be assessed against his estate be paid by the beneficiaries, each in their proportionate share. On appeal the Kansas Court quoted the trial court as follows:

"It appears to this Court that the so-called marital deduction is in fact an exclusion. The property, or value thereof, set aside to the widow is not property subject to the Federal Estate Tax as a part of the estate of the testator. It is included in the tax return only for the purpose of calculating the widow's one-half

interest (for estate tax purposes) in the jointly owned property, and will be subject to taxation on the widow's estate at her death.

"Thus the marital deduction is distinguished from the estate deduction or exemption of $60,000 since the latter is included in the taxable property, although no tax is levied on said $60,000.

"Therefore, the words of the will 'taxes which will be assessed against my estate' necessarily excludes the marital deduction since the same is not taxable property of the estate of Harry P. Rooney, deceased."

The Kansas Supreme Court adopted this reasoning and again while the case involved a condition of testacy rather than intestacy, the discussion of legal principles therein causes one to conclude that the same reasoning would be applied to an intestate estate.

The Government claims that Kansas G.S.1949, 59-502 makes the estate subject to taxes prior to any marital deduction, and argues that the estate tax is one of the taxes that the Kansas legislature had in mind. This Court disagrees; it feels that the Kansas legislature must enact a specific apportionment statute in order to impose any estate tax on the widow's one-half interest. Perhaps the reason that the Kansas legislature has not seen fit to pass any such apportionment statute is that it doesn't want to defeat the purpose of Congress in providing for the marital deduction.

The remaining matter to be considered is attorney fees. The Government claims in their brief (but not in their disallowance assessment statement) that the $100,000 claimed by the plaintiff herein on behalf of its attorney should not be allowed because the attorney's services were not rendered to the estate but rendered to the decedent's widow. In every estate matter some one of the heirs can be said to have received more or benefitted more than others from the work performed by the attorney in attempting to probate the estate in accordance with the

law. This does not mean that the services would be rendered for those individual beneficiaries, however. If the Government's contention is followed to its logical conclusion, no attorney fees can be allowed the administrator. But the question is: are the services of the attorney beneficial to the estate as a whole? Ordinarily, this is a matter for the state court to determine.

But according to the provisions of § 2053(a) (4) of the Internal Revenue Code of 1954 an estate is entitled to deduct the fees which have not been allowed but which are "allowable by the laws of the jurisdiction * * * under which the estate is being administered." Thus, a federal court in an estate tax case will allow the deduction of the amount which the circumstances show the state court will probably allow for services in the administration of the estate. In considering this matter the Court observes that it is the duty of an administrator to collect and protect assets of the estate and the administrator is justified in employing an attorney to assist it in collecting or protecting the assets of the estate. Accordingly it is entitled to attorney's fees paid in an action necessary to collect assets of the estate, and counsel fees and costs necessarily incurred in asserting title to and in procuring the assets, by whatever means, are properly allowed. (See 33 C.J.S. Executors and Administrators § 227 p. 1225.)

The situation before the Court at this time presents a matter of procedure which has bothered attorneys handling estates and which most certainly has annoyed beneficiaries of estates. Many attorneys in the exercise of reasonable caution will not close an estate until there has been a determination of final tax liability. The attorneys must be concerned, among other things, with whether or not the government is going to approve the valuation of the assets of the estate, the valuation of the marital deduction and the deductions allowed under § 2053. Further, if the estate tax return is going to be contested by the government the attorney for the estate is entitled to an ad-

ditional fee in the tax case. Therefore as a practical matter the original federal estate tax return is preliminary and exploratory in the larger estates and the amount claimed as a deduction may be increased before the expiration of the applicable statutory period of limitations or prior to the hearing of an estate tax case which is commenced in due time. In any event the amount that will be allowed as a deduction for attorney's fees must be estimated for tax purposes.

In estimating the fee the Court observes that there is no positive rule which can be followed in determining a fair and reasonable fee because each case must be determined upon its own facts and circumstances with consideration given to the amount involved, the time and effort expended by the attorneys, the seriousness of the problems involved, the results obtained and the experience and ability of the attorneys. (See Kan. G.S.1949, 59–1717; In re Eyth's Estate, 157 Kan. 268, 139 P.2d 378; and In re Snyder's Estate, 188 Kan. 46, 360 P.2d 883.)

It appears from the record of this case that the matter of the administrator's attorney's fees remains to be resolved, and it further appears that the facts of this case do not present a situation where the federal estate tax laws would enter into or be in derivation of the amount of attorney fees ultimately to be allowed by the Probate Court in the absence of any collusion or fraud.

Regardless of what the Government wants to say as to how or why the whole estate is in Kansas and not Maryland, the total value of the estate is approximately $1,200,000.00. The minimum fee schedule of Shawnee County, Kansas provides:

"Administration of estate, testate or intestate, usual services 5% up to $100,000, 2½% above; plus 2½% of the appraised value of all jointly held property (plus an additional charge for ancillary proceedings and unusual estate, inheritance, income tax or related problems.)"

Obviously $32,500 would be the minimum amount involved and in the absence of any unusual or extraordinary services the action of the government in determining that the allowable fee should be reduced to $30,000 cannot be sustained. Further, while the Treasury regulations are extensive as to the circumstances under which the amount fixed for fees by a state probate court will or will not be allowed as a deduction, this Court holds that after reviewing the record in this case the evidence does not demonstrate that the fee proposed is unreasonably high. This is so notwithstanding that a determination by the Commissioner is presumptively correct and that the estate has the burden of proving facts which entitle it to a larger deduction. Tax officials cannot disallow attorneys fees by merely stating that the matter is in litigation and later asserting that the services performed were not for the estate as a whole but for the widow.

Clearly this was not the usual case. The fact that this estate has been in administration since 1957, over seven years, is manifestly indicative of the many problems with which the administrator and its attorneys were confronted. The effectiveness of its administration cannot be denied. Moreover, the administrator's attorney's fee is supported by proper affidavit, and the record presently before the Court reveals the extent that this estate has been fiercely contested by the decedent's Maryland trustees. The administrator's attorneys have shown knowledge, skill and dexterity and have exercised sound discretion in behalf of the administrator. The fee claimed for services of the attorney for the administrator is less than 10% of the assets which were recovered in the protracted Maryland litigation. In conclusion this Court finds that under the circumstances $100,000 should be allowed as a deduction on the federal estate tax return.

The matter of inheritance taxes was discussed by the parties in their briefs. However, with the rulings heretofore made, the Court feels that any further

dispute over inheritance tax can now be amicably resolved.

Counsel for the plaintiff will prepare and submit the appropriate journal entry for approval and signature.