**Harry D. SCHROEDER, Executor of the Estate of Thomas J. Woodmansee, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV-87-1901-A.**

United States District Court, W.D. Oklahoma.

Oct. 20, 1988.

F.H. Wright, Oklahoma City, Okl., for plaintiff.

Louise P. Hytken, Susan R. McLean, Dept. of Justice, Dallas, Tex., for defendant.

## ORDER

ALLEY, District Judge.

This case is presently before the Court on cross motions for summary judgment under Rule 56 Federal Rules of Civil Procedure. Generally, on behalf of the estate, the plaintiff seeks a refund of funds which the government is alleged to have wrongfully assessed as estate taxes. The specific question raised by the parties' submissions for summary judgment may be stated as follows: Whether the government erred in refusing to allow the estate a marital deduction on certain joint tenancy and statutory election property owned by the surviving spouse following the decedent's death, when the spouse transferred the property into a trust, retaining only a life interest, in settlement of a financial dispute arising from decedent's death.

For the reasons noted below, the Court finds that the government did not err in disallowing plaintiff's claim for a marital deduction for the property at issue. Given this disposition on the merits, the Court need not rule on the government's jurisdictional challenge based on the variance doctrine of 26 U.S.C. § 7422.

I.

By its very nature, the plaintiff's refund action proceeds from a death. On 17 September 1981, Thomas J. Woodmansee died, leaving behind him his wife of some eighteen years, Peggy, and two adult daughters from a previous marriage, Martha and Lou Ann. During a period of illness shortly before his death, Woodmansee made two significant decisions that affected the subsequent disposition of his property. First, on 6 July 1981, Woodmansee transferred to himself and his wife, as joint tenants, a Merrill Lynch account (# 58580977), which had a fair market value of $229,843. Second, eleven days later, on July 17th Woodmansee signed his will.

The Woodmansee estate was admitted to probate in the Oklahoma state courts on 3 November 1981. On 9 April 1982, Peggy Woodmansee elected against the will, taking her statutory share under Oklahoma law. Peggy Woodmansee's share, one-third of the estate, had a fair market value of $77,121.

A dispute developed between Peggy Woodmansee and her two step-daughters regarding the disposition of the Merrill Lynch account. Apparently, the daughters did not learn of the deceased Woodmansee's transfer of the property into joint

tenancy until late September 1981. The revelation was disturbing to them. The daughters felt that the transfer did not accord with their father's true intent, which was to provide for his wife, Peggy, during her lifetime but to leave the remainder of the estate to his children or their issue. The daughters were determined to ensure that Peggy Woodmansee honored their father's intent, as they perceived it.

In conjunction with the plaintiff, Harry Schroeder, the daughters hired counsel who engaged in arm's length negotiations with lawyers for Peggy Woodmansee. Initially, these negotiations did not advance beyond the status quo—that is, Peggy Woodmansee's ownership of the joint tenancy property at issue. Finally, "[t]o maintain peace and to keep from being sued," Peggy Woodmansee agreed to the formation of a trust. Declaration of Peggy Woodmansee, at 1. The so-called Woodmansee Trust was formed on 26 February 1982. Peggy Woodmansee transferred all her rights and interests in the Merrill Lynch account to the Woodmansee Trust. Under the terms of the trust agreement, she receives 25 percent of the trust income for life. The balance of the income is allocated in equal shares to decedent's two daughters. When Peggy Woodmansee dies, the Woodmansee Trust will terminate and the principal will be distributed equally to the daughters or their issue. On 3 May 1985, motivated by the same desire to avoid conflict, Peggy Woodmansee transferred her statutory election property to the Woodmansee Trust.

The assets of the Woodmansee Trust—specifically, the joint tenancy Merrill Lynch account and the statutory election property—form the basis for this lawsuit. The plaintiff included this property in the gross estate of the decedent and unsuccessfully claimed it as a marital deduction.

## II.

The plaintiff's refund action is founded on 26 U.S.C. § 7422. Although establishing specific procedural requirements, subsection (a) of that statute contemplates civil actions by taxpayers who claim that the Internal Revenue Service (IRS) has "erroneously or illegally assessed or collected taxes." 26 U.S.C. § 7422(a). It is well settled that, in actions under section 7422, taxpayers bear the burden of proof of establishing their entitlement to a refund. *See Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623 (1935); *Mills v. United States*, 241 F.Supp. 955, 958 (M.D.Ga.1965).

] In this case, the basis of the plaintiff's claim is the government's disallowance of the marital deduction as to certain property. Codified at 26 U.S.C. § 2056, Congress enacted the marital deduction provisions to permit a part of the decedent's estate to be transferred to the surviving spouse free of the burden of federal tax. *See Murray v. United States*, 687 F.2d 386, 390–91, 231 Ct.Cl. 481 (1982); *Farley v. United States*, 581 F.2d 821, 835, 217 Ct.Cl. 560 (1978). There are limits on this tax benefit, however. The interest in property transferred to the surviving spouse must be taxable in the estate of the surviving spouse. Congress did not envision "a tax-exempt transfer of wealth into succeeding generations." *United States v. Stapf*, 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (1963). Basically, to qualify for the marital deduction, property interests must be subject to characterization in two ways: (1) as having "passed" from the decedent to the surviving spouse; and (2) as "deductible" interests. *See Waldrup v. United States*, 499 F.Supp. 820, 823 (N.D. Miss.1980); Treas. Reg. § 20.2056(a)–1(b) (as amended in 1986). The first characterization, passing, is of primary concern here.

At bottom, the government argues that the joint tenancy and statutory election property received by Peggy Woodmansee, as sole owner, due to the death of her husband did not "pass" to her from the decedent, because Peggy Woodmansee transferred these property to a trust in settlement of a dispute over the property with her step-daughters.[1] To support this

---

1. If the Court accepts the government's view on the passing issue, there is clearly no basis for a

argument, the government relies on Treas. Reg. § 20.2056(e)–2(d).[2]

By its terms, Treas. Reg. § 20.2056(e)–2(d) speaks only to will contests. It provides that property interests are not considered as having passed to the surviving spouse from the decedent if the surviving spouse assigns or surrenders the property interests "as a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder." Treas. Reg. § 20.2056(e)–2(d)(1).

The property interests at issue here do not involve provisions of the deceased Woodmansee's will. In the case of joint tenancy property, like the Merrill Lynch account, the law is clear: "the survivor's estate simply is a continuation, or extension, of the surviving [joint] tenant's existing estate." *Clovis v. Clovis*, 460 P.2d 878, 881–82 (Okla.1969); *see* R. Cunningham, W. Stoebuck & D. Whitman, *The Law of Property* § 5.3 (1984). Also, Peggy Woodmansee's statutory election invalidated decedent's will as to her. *See In re Estate of Dawson*, 561 P.2d 150, 151 (Okla.App.1976). Thus, as to the applicability of Treas. Reg. § 20.2056(e)–2(d), the plaintiff urges the Court to adhere to the "specific regulation language." Brief In Support of Plaintiff's Motion For Partial Summary Judgment, at 24.

The government, however, marshals a cogent body of authority in support of its view that the courts have interpreted the regulation broadly to encompass any controversy arising from the devolution of the decedent's estate which results in a settlement. In *United States Trust Company v. C.I.R.*, 321 F.2d 908 (2d Cir.1963), *cert. den. sub nom. In re Estate of Davenport v. C.I.R.*, 376 U.S. 937, 84 S.Ct. 792, 11 L.Ed.2d 658 (1964), the passing issue was of "crucial" significance to the court's resolution of the refund action. 321 F.2d at

910. The Second Circuit observed that: "The medium by which the property passes, whether it be by intestacy, one or more testamentary documents or even by a partial intestacy, is immaterial." *Id.* at 910. This language of *United States Trust* was embraced by the Fifth Circuit in *Citizens & Southern National Bank v. United States*, 451 F.2d 221 (5th Cir.1971), where the court rejected a "restrictive interpretation" of Treas. Reg. § 20.2056(e)–2(d). 451 F.2d at 226.

In *Citizens & Southern*, the surviving spouse had relinquished all her claims against the estate in excess of $40,000 as part of a settlement agreement with her step-son. Under Georgia law, part of the property the spouse relinquished descended to her by principles of intestate succession. In ruling in favor of the government, the Fifth Circuit held that the requirements of Treas. Reg. § 20.2056(e)–2(d) were applicable to all the property devolving to the spouse—the intestate property, as well as the property covered by the decedent's will. The Court acknowledged that the intestate property was not addressed by the literal terms of the will contest regulation. However, the court stated:

> For purposes of the regulation, we are at a loss to discern why a settlement of a controversy involving an estate, a portion of which passes by intestate succession, should be treated any differently than a settlement concerning only property which has been disposed of by means of a testamentary document. We think that the Second Circuit's broad interpretation of the regulation is entirely proper and we conclude that because the settlement agreement in the instant case "resolv[ed] a controversy over the decedent's property," the regulation requires that the property surrendered by the

marital deduction claim. For, the life interest retained by Peggy Woodmansee in 25 percent of the trust income is a nondeductible, terminable interest. 26 U.S.C. § 2056(b)(1); Treas. Reg. § 20.2056(b)–1(b); *see Stedman v. United States*, 233 F.Supp. 569, 571 (D.Mass.1964).

**2.** In pertinent part, the regulation provides as follows:

(d) Will contest. (1) If as a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having "passed from the decedent to his surviving spouse."

widow not be considered as having passed to her from the decedent. 451 F.2d at 227 (quoting *United States Trust,* 321 F.2d at 910–11). Thus, the *Citizens & Southern* court rejected the argument that the absence of a will rendered the treasury regulation inapplicable the intestate property.

The federal district courts have also endorsed a broad reading of Treas. Reg. § 20.2056(e)–2(d). *See Pastor v. United States,* 386 F.Supp. 106, 106–07 (E.D.N.Y. 1974). In *Pastor,* the court rejected the plaintiff's contention that, because the surviving spouse's settlement involved intestate property, the will controversy regulation was inapplicable. 386 F.Supp. at 806–07. The *Pastor* court held that Treas. Reg. § 20.2056(e)–2(d) "clear[ly] spoke to the surviving spouse's settlement and made the relinquished intestate property ineligible for the marital deduction." *Id.* at 807.

A liberal approach toward the interpretation of tax laws is familiar. *See Lyeth v. Hoey,* 305 U.S. 188, 196, 59 S.Ct. 155, 159, 83 L.Ed. 119 (1938) (noting Congress' use of "comprehensive terms" in tax legislation and focusing on "the substance of the statutory exemption" not its form); *Wachovia Bank & Trust Co. v. United States,* 163 F.Supp. 832, 837, 143 Ct.Cl. 376 (1958) (holding that the estate's obligation to relieve joint property of indebtedness passed to the surviving spouse by "inheritance" because the obligation was "in direct devolution of her estate"); *see also Ward v. United States,* 517 F.Supp. 576 (W.D.Okla. 1981) (noting, as to income tax, that "tax laws have been liberally interpreted without restrictive labels or limitations"), *aff'd,* 695 F.2d 1351 (10th Cir.1982).

Moreover, the broad reading of the will contest regulation conforms to the underlying policy of the marital deduction. As noted, the tax benefit of the marital deduction is not open-ended. Congress envisioned that property transferred to the surviving spouse in devolution of the decedent's estate would be subject to taxation in the estate of the surviving spouse. Unintended revenue may be lost when the marital deduction is not commensurate with the property actually received by the surviving spouse—that is, the property subject to the envisioned second-stage taxation. *See Waldrup,* 499 F.Supp. at 824; *Pastor,* 386 F.Supp. at 106.

[ ] The Court finds the *United States Trust* line of authority persuasive on the interpretation of the will contest regulation, Treas. Reg. § 20.2056(e)–2(d). Consequently, the provisions of that regulation shall determine the issue raised by Peggy Woodmansee's settlement, involving joint tenancy and statutory election property.

The plaintiff contends that this line of authority is inapposite, as it relates to the joint tenancy property, asserting that the true issue before the Court is the deductibility of the interest, not whether it passed. To support his contention, the plaintiff stresses the "vested" nature of property interests in joint tenancy property under Oklahoma law and directs the Court to 26 U.S.C. § 2056(d)(5). This provision specifies that property "shall be considered as passing" from the decedent to another person if, at the time of the decedent's death, the decedent and such other person owned the property jointly with rights of survivorship.

With regard to the plaintiff's vested-rights argument, the Oklahoma Supreme Court has noted that "by the very nature of joint tenancy, title of the joint tenant who dies first terminates at death and vests eo instanti in the survivor." *Clovis,* 460 P.2d at 881. The vested nature of joint tenancy property, however, is not determinative of the passing issue, nor does it render the will contest regulation inapplicable.

In *Citizens & Southern,* the plaintiff argued that the surviving spouse's decision to elect against the will resulted in the passing of the statutory share, creating in the spouse a vested interest. The spouse's election occurred prior to her settlement with her step-child. Therefore, the plaintiff in *Citizens & Southern* contended that the will contest regulation was inapposite, because that regulation only prescribed the conditions for an event that had already taken place, in the case of the statutory

election property—that is, passing. Citing *United States Trust*, the Fifth Circuit rejected the plaintiff's vested-rights argument, holding that the spouse's "acquisition and subsequent relinquishment of 'vested' rights in no way renders the 'will controversy' regulation inapplicable." 451 F.2d at 228. Moreover, intestate property has been held subject to the will contest regulation, although such property, like joint tenancy property vests immediately under Oklahoma law. *See Pastor*, 386 F.Supp. at 106–07; *Davis v. Morgan*, 95 P.2d 856 (Okla.1939); *cf. Estate of Tebb*, 27 T.C. 671, 682–84 (1957) (rejecting petitioner's argument that the will contest regulation was not applicable to the residuary estate because it "vested immediately" in the surviving spouse).

The plaintiff's reference to the *First National Bank* decision is not persuasive. *First National Bank v. United States*, 233 F.Supp. 19 (D.Kan.1964). For the Court in *First National Bank*, the "character" of the surviving spouse's interest in intestate property—as defined by state law—was "determinative" on the passing issue. *Id.* at 23. The court declined to apply the will contest regulation to the surviving spouse's settlement agreement involving the intestate property; noting that the property belonged to the spouse "free and clear" and, therefore, she could "do with it as she pleased." *Id.* at 24. Of central importance, the court suggested that application of the will contest regulation to bar "passing" of the spouse's vested property interest would contravene the settled principal that state law defines the nature of the property interest subject to federal tax liability. *Id.* This deductive reasoning appears misguided, however, viewed in the light of the Supreme Court's decision in *Lyeth v. Hoey*, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938).

In *Lyeth*, the Supreme Court was called upon to determine whether property received by an heir from the decedent's estate was acquired by "inheritance" under federal tax law, when the heir received the property in settlement of his challenge to the validity of the decedent's will. Initially, the *Lyeth* court stressed the pervasive influence of state law. Among other things, the court noted that state law defined the character of petitioner's status as an heir, including the scope of his rights to contest the will, and established the indicia of a valid will. Yet, in reversing the court of appeals for its application of the Massachusetts rule, the court held that questions requiring the construction of federal statutory exemptions are "necessarily" federal questions. 305 U.S. at 192–94, 59 S.Ct. at 157–59. They are "not to be determined by local characterization." *Id.* at 193, 59 S.Ct. at 158. Consequently, the court rejected state law as determinative on whether the heir's property was acquired by "inheritance."

■ Similarly, in the case at bar, the "vested" nature of Peggy Woodmansee's joint tenancy property under Oklahoma law can not be determinative of whether such property "passes" under federal law. As used in the tax code and implementing regulations, "passing" is a concept of federal law. Property interests vested under state law are no less vested because Congress—or an administrative agency implementing the will of Congress—determines that, under certain conditions, a federal tax benefit will not be allowed.

Lastly, on the passing question, the Court finds no support for the plaintiff's position in section 2056(d)(5). At common law, the ownership interest of a decedent joint tenant does not pass in any conventional sense to the surviving joint tenant. Aware of this common law reality, in enacting section 2056(d)(5), Congress merely sought to recognize the actual shift in beneficial interest to the surviving joint tenant for federal estate tax purposes. *See Awtry's Estate v. Commissioner of Internal Revenue*, 221 F.2d 749, 760 (8th Cir.1955) (quoting *United States v. Jacob*, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939)); *see also* Annotation, *Succession or Estate Tax*, 1 ALR2d 1101, 1116–18 (1948) (noting that the common law reality of joint tenancy ownership did not bar application of the law of federal estate taxes). This general statutory rule does not bar the IRS from promulgating regulations, like the will con-

test regulation, which reasonably define the parameters of the passing concept. *See Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 843–46, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1346 (9th Cir.1982).

### III.

■] Applying the will contest regulation to the facts of this case, the conclusion is clear: the joint tenancy and statutory election property did not pass to Peggy Woodmansee from the decedent. The plaintiff can not seriously dispute that Peggy Woodmansee surrendered the joint tenancy and statutory election property "in settlement of the controversy" arising from the devolution of the decedent's estate. Treas. Reg. § 20.2056(e)(d)(1). True, Peggy Woodmansee's settlement with the decedent's daughters was not prompted by any pending legal action. However, lawsuits are not determinative of the existence of a "controversy" between the parties—all that is required is adversity. *See Bel v. United States,* 452 F.2d 683, 694 (5th Cir. 1971), *cert. den.,* 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972); *Citizens & Southern,* 451 F.2d at 225–26 (noting that the will contest regulation must encompass more than "those settlements achieved at the end of an armageddon").

On the record of this case, an adverse relationship between the parties is readily apparent. Concerned that Peggy Woodmansee might not "do what's right" with her property, the plaintiff retained counsel and entered into arm's length negotiations with lawyers for Peggy Woodmansee, which culminated in the formation of the Woodmansee Trust. Second Affidavit of Martha Schroeder, at 4–5; *see* Second Affidavit of Lou Ann Waters, at 5–6. Citing *Citizens & Southern,* the *Bel* court specifically noted that "arm's length negotiations are sufficient to evidence the existence of a 'controversy'" under Treas. Reg. § 20.2056(e)–2(d). 452 F.2d at 694. Lastly, although formal legal action was not instituted, there is ample evidence in the record that Peggy Woodmansee surrendered her joint tenancy and statutory election proper-

ty to the Woodmansee Trust "[t]o maintain peace and to keep from being sued." Declaration of Peggy Woodmansee, at 1.

### IV.

In sum, applying the rule of Treas. Reg. § 20.2056(e)–2(d), the Court concludes that the joint tenancy and statutory election property at issue in this case did not pass to Peggy Woodmansee from the decedent. Consequently, the government did not err in disallowing the marital deduction claimed for this property. The plaintiff's Motion for Partial Summary Judgment is denied and the defendant's Motion for Summary Judgment is granted.