Harry D. SCHROEDER, Executor of the Estate of Thomas J. Woodmansee, deceased, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 88–2946.

United States Court of Appeals, Tenth Circuit.

Feb. 7, 1991.

**1548**

F.H. Wright, Wright & Wright, Oklahoma City, Okl., for plaintiff-appellant.

Kevin Brown, Tax Div., U.S. Dept. of Justice, Washington, D.C. (James I.K. Knapp, Acting Asst. Atty. Gen., Gary R. Allen, Robert A. Bernstein, John A. Dudeck, Jr., Tax Div., Dept. of Justice, Washington, D.C., William S. Price, U.S. Atty., Oklahoma City, Okl., of counsel, were on brief), for defendant-appellee.

_____

* Honorable John L. Kane, District Judge, United States District Court for the District of Colorado, sitting by designation.

Before McKAY and SEYMOUR, Circuit Judges, and KANE,* District Judge.

PER CURIAM.

This is a case of first impression in the area of federal estate tax. A surviving spouse surrendered her survivorship rights to property held in joint tenancy with her husband, and her statutory-election rights to the decedent's property, in settlement of a controversy with decedent's daughters from a previous marriage concerning her entitlement to the property. At issue is whether that property nevertheless "passed" to her within the meaning of the marital deduction statute, 26 U.S.C. § 2056(a), (d).[1] The District Court for the Western District of Oklahoma determined on summary judgment that such property in these circumstances does not pass to the surviving spouse and accordingly disallowed the marital deduction. *Schroeder v. United States*, 696 F.Supp. 1426 (W.D. Okla.1988). We agree with the district court and affirm.

I.

Thomas J. Woodmansee (Thomas) was married to Peggy Woodmansee (Peggy) for approximately eighteen years, and had two adult daughters from a previous marriage, Martha Schroeder (Martha) and Lou Ann Waters (Lou). On July 6, 1981, Thomas created a substantial stock account, naming himself and Peggy as joint tenants with a right of survivorship. Neither of his daughters was aware of the creation of this account. On July 16, 1981, Thomas signed a will providing that his property be placed in a trust, the income from which was to be used to provide for Peggy for the remainder of her life. After Peggy's death, the corpus of the trust was to be divided equally between Martha and Lou, or their issue, keeping the property in the family. On the same day, Thomas deeded the family farm over to Martha and Lou.

1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect as of the date of the decedent's death on September 17, 1981.

Both of the daughters stated by affidavit that they knew of the provisions of the will and of their father's intent and that both intended to honor their father's wishes. In addition, both daughters stated that Thomas was mentally competent at all times during his life.

Thomas died two months later. At the time of his death, the fair market value of the stock account was approximately $229,843. Later that month, Martha and Lou learned for the first time that Thomas had created the joint stock account, which was wholly and independently owned by Peggy and would not pass through Thomas' will. Relations between Peggy and Thomas' daughters were strained by this revelation. In their affidavits, Martha and Lou stated that they thought Peggy had a "moral duty" to leave the principal of the stock account to them and their children.

The will was admitted to probate and Harry D. Schroeder (Schroeder), Martha's husband, was named executor. Martha and Lou were advised by an attorney to negotiate with Peggy concerning the stock account, and their attorney entered into discussions with Peggy's attorney. In February 1982, in settlement of these discussions, Peggy placed the stock account into a trust account with a neutral trustee. Quarterly income from the trust is divided among the three women, one-fourth to Peggy and three-fourths divided equally between Martha and Lou, or their issue, until Peggy's death. At that time, the principal in the trust account is to be distributed equally to Martha and Lou, or their issue.

In April 1982, Peggy filed her election to take the statutory spousal share of the estate rather than take under the will. At the time of Thomas' death, the spousal election, one-third of the estate, had a fair market value of $77,121. Peggy deposited the spousal share into the trust account, under the conditions for distribution set forth for the stock account.

When Schroeder filed the estate tax return, he included the joint stock account and the spousal election share in the estate, pursuant to 26 U.S.C. §§ 2033, 2040(a).[2] He also claimed them as part of the federal marital deduction, pursuant to 26 U.S.C. § 2056.[3] The IRS issued Schroeder a notice of deficiency after it disallowed the marital deduction with respect to the stock account and Peggy's statutory share of the estate. Schroeder paid the deficiency and claimed a refund, which the IRS denied. Schroeder then brought this action.

Schroeder moved for partial summary judgment, arguing that the value of the

---

**2.** At the time of decedent's death, 26 U.S.C. § 2033 provided that: "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2040(a) provided in pertinent part: "The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person ... in their joint names and payable to either or the survivor."

**3.** 26 U.S.C. § 2056 provided:

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b) [limitation in the case of life estate or other terminable interest] and (c) [limitation on aggregate of deductions], be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to [the] extent that such interest is included in determining the value of the gross estate.

. . . .

(c) LIMITATION ON AGGREGATE OF DEDUCTIONS.— ... The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed the greater of—(i) $250,000, or (ii) 50 percent of the value of the adjusted gross estate.

. . . .

(d) DEFINITION.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

. . . .

(3) such interest is the dower or courtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

. . . .

(5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship.

stock account should be included in the marital deduction under the express provisions of 26 U.S.C. § 2040.[4] Schroeder denied that the provisions of Treas.Reg. § 20.2056(e)–2(d) (the will contest regulation)[5] applied to the value of the stock account because under Oklahoma law the property had vested in Peggy before the disagreement arose. Schroeder argued that the will contest provision only applies when the spousal property is vested after and in settlement of a controversy specifically concerning the terms of a will.

The IRS responded with its own motion for summary judgment. It argued that the value of both the joint stock account and the spousal election were properly excluded from the marital deduction due to the will contest regulation. It urged the district court to consider two circuit court cases, *United States Trust Co. v. Commissioner*, 321 F.2d 908 (2d Cir.1963), and *Citizens & Southern Nat'l Bank v. United States*, 451 F.2d 221 (5th Cir.1971), which do not limit application of the will contest regulation to contests under the terms of a will. The IRS also relied on a policy argument, stating that the marital deduction was intended to be applied in situations in which the government had the potential for a two-tiered taxing of the property. Under this system, a portion of the deceased's property was taxed at death, and a portion

remained free of tax until the death of the spouse, at which time the "balance" of the estate tax would be levied. Thus the government was protected from circumstances in which property might pass untaxed to the next generation by means of an agreement between the surviving spouse and other beneficiaries. The district court was persuaded by the arguments of the IRS and the circuit court cases, concluding that the will contest regulation should apply in this circumstance. *Schroeder*, 696 F.Supp. at 1429–30. Schroeder appealed to this court.

## II.

We review a grant of summary judgment under the same standard employed by the trial court pursuant to Fed.R.Civ.P. 56(c).

When a motion for summary judgment is granted, it is the appellate court's duty to examine the record to determine if any genuine issues of material fact were in dispute; if not, the court must decide if the substantive law was correctly applied. During this review, the court must examine the record in the light most favorable to the party opposing the motion.

*Lowell Staats Mining Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989) (quoting *Osgood v. State Farm Mut.*

---

**4.** Under the version of the tax code in effect at the time of Thomas' death, the federal marital deduction was limited to the greater of $250,000 or one-half of the value of the estate. Although Schroeder's complaint claimed deductions for both the stock account and the statutory share, he argued for summary judgment only on his claim for marital deduction on the stock account because he calculated that the fair market value of the stock account plus the uncontested portion of the marital deduction would exceed the maximum allowed marital deduction.

**5.** Treas.Reg. § 20.2056(e)–2(d) provides:

(1) If as a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having "passed from the decedent to his surviving spouse."

(2) If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest

is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.

*Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988)).

The marital deduction was originally conceived in 1948 to equalize treatment of spousal estates between states with community property statutes and those with the so-called "common law" statutes. 4 J. Rabkin & M. Johnson, Federal Income, Gift and Estate Taxation § 53.04 at 5339 (1989) (hereinafter Rabkin & Johnson). "The marital deduction is based on the value of property 'passing' from the decedent to the surviving spouse. The property must be included in the gross estate but not necessarily in the probate estate." *Id.* at 5340.

The legislative history of the measure sheds some light on congressional philosophy behind the marital deduction.

[A] decedent with a small- or medium-sized estate should be able to leave a minimum amount of property to the surviving spouse without the imposition of an estate tax.... [T]he present limitation on transfers to a spouse free of gift tax is too restrictive and tends to interfere with normal interspousal lifetime transfers.

H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. 17 (1976) U.S.Code Cong. & Admin.News 1976, p. 3371 (to accompany H.R. 14844 amending § 2056 of the 1954 Code), *reprinted in* 7A Rabkin & Johnson at 7:3242.1 (1986).

In 1981, Congress further liberalized the marital deduction by, among other actions, removing the maximum deduction limitation. These 1981 provisions do not apply to Thomas' estate. They are effective with respect to estates of decedents who died after December 31, 1981, while Thomas died September 17, 1981. Nevertheless, the legislative history of the 1981 provisions does explain in greater detail why the code provisions applicable to Thomas' estate did not comport with congressional intent and were changed.

Because the maximum estate tax marital deduction generally is limited, under present law, to one-half of a decedent's adjusted gross estate, the estate of a decedent who bequeaths his entire estate to his surviving spouse may be subject to estate taxes even though the property remains within the marital unit. When the surviving spouse later transfers the property (often to their children), the entire amount is subject to transfer taxes. The cumulative effect is to subject their property to tax one and one-half times, i.e., one-half upon the death of the first spouse and again fully upon the death of the second spouse. This effect typically occurs in the case of jointly held property. Because this additional tax falls most heavily on widows, it is often referred to as the "widow's tax."

Although the committee recognizes that this additional tax can be minimized through proper estate planning, it believes that an individual should be free to pass his entire estate to a surviving spouse without the imposition of any additional tax. For similar reasons, the committee believes it appropriate to permit unlimited lifetime transfers between spouses without the imposition of any transfer taxes.

. . . .

The committee believes ... that tax consequences should not control an individual's disposition of property.

H.R.Rep. No. 97–201, 97th Cong., 1st Sess. 158–164 (1981) (to accompany H.R. 4242 amending § 2056 of the 1954 Code), *reprinted in* 7A Rabkin & Johnson at 7:3242.3–.4 (footnote omitted).

The tax code clearly provides that certain interests which have "passed" to the surviving spouse may be included in the marital deduction. 26 U.S.C. § 2056(a) (marital deduction for "property which passes or has passed from the decedent to his surviving spouse"); *id.* § 2056(d)(5) (definition section, "an interest in property shall be considered as passing from the decedent to any person if ... such interest was, at the time of the decedent's death, held by such person and the decedent ... in joint ownership with right of survivorship"). However, subsequent interpretive regulations provide that property surrendered by a surviving spouse in settlement of a controversy over a decedent's will is constructively deemed not to have "passed" to such

spouse. Treas.Reg. 20.2056(e)–2(d)(1) (will contest regulation). This regulation is consistent with the legislative history of the code section:

> If the surviving spouse takes under the decedent's will, the interest passing to her is determined from the will. In this connection proper regard should be given to interpretations of the will rendered by a court in a bona fide adversary proceeding. If as a result of a controversy involving a bequest or devise to the surviving spouse, such spouse assigns or surrenders an interest in property pursuant to a compromise agreement in settlement of such controversy, the amount so assigned or surrendered is not deductible as an interest passing to such spouse.

S.Rep. No. 1013 Part 2, 80th Cong., 2d Sess. 4 (1948), *reprinted in* 4 Rabkin & Johnson at 5344.

■ This statutory and regulatory scheme is built upon the fundamental rule that state law determines what property interest individuals hold, and federal law determines how that property shall be taxed, *see e.g., United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985); *Morgan v. Commissioner,* 309 U.S. 78, 80, 60 S.Ct. 424, 425–26, 84 L.Ed. 585 (1940); *Goldstein's Estate v. Commissioner,* 479 F.2d 813, 816 (10th Cir.1973). Thus, federal law controls whether property "passes" from the estate of a deceased individual for the purposes of the federal estate tax.

The IRS and the district court relied heavily on *United States Trust Co. v. Commissioner,* 321 F.2d 908 (2d Cir.1963), and *Citizens & Southern Nat'l Bank v. United States,* 451 F.2d 221 (5th Cir.1971). These cases involved situations in which the surviving spouse and a beneficiary reached an agreement modifying the estate which would have otherwise passed to the surviving spouse.

In *United States Trust Co.,* a U.S. citizen held property in both New York and in France. He intended to give his wife a life estate with a power of appointment over a portion of the New York estate and to have his wife inherit his villa in France. Although he attempted to dispose of the property separately in two testamentary devices, his intent that his wife take the French real property was blocked by the French requirement that his daughters execute certain documents, which they refused to execute. After negotiations, the daughters agreed to execute the appropriate French documents in exchange for the wife's agreement to relinquish her power of appointment over the decedent's New York property after the state probate procedure was complete.

The court concluded that the wife could not claim a marital deduction for the value of the New York property. The French property did not qualify for the marital deduction. Although the estate argued that the wife had taken the New York property interest under the decedent's will through the New York probate procedure, the court held that the marital deduction was to be taken only for the property which the wife actually received after the terms of the settlement agreement had been fulfilled. The wife was not permitted to claim as part of the marital deduction the trust property over which she had previously agreed to relinquish control.

> When the resolution of a controversy between the beneficiaries regarding the decedent's property culminates in an agreement by which the surviving spouse relinquishes property which qualifies for the marital deduction in return for property which does not so qualify, Treas.Reg. § 20.2056(e)–2(d)(1) is applicable.... The regulation is clear; it provides that where an agreement resolving a controversy over the decedent's property entails the assignment or surrender of property by the surviving spouse, said property 'is not *considered* as having "passed from the decedent to his surviving spouse."' Treas.Reg. § 20.2056(e)–2(d)(1).

*United States Trust Co.,* 321 F.2d at 910–11.

In *Citizens & Southern,* the decedent had lived in and owned property in Florida and had also held real property in Georgia. After his death, his wife and his son from a

previous marriage entered into an agreement with respect to the decedent's estate. She received $40,000 from the son in exchange for her statutory interest in any of decedent's property in Georgia and in Florida. The IRS refused to allow her to take a marital deduction on the value of the statutory election in Florida and of a potential elective share under Georgia statute, but rather insisted that she claim as her marital deduction only the $40,000 which she received in settlement from the son. The district court agreed with the IRS action and the Fifth Circuit affirmed, basing its opinion on the will contest regulation. 451 F.2d at 228.

The court noted that the settlement agreement contained a complete release of all interest that the decedent's wife may have had in property in the decedent's estate. The court held that the will contest regulation's requirement for a "controversy" was satisfied by the potentially adverse positions of decedent's son and his wife. It relied on the Second Circuit's broad interpretation of the will contest regulation's scope in *United States Trust Co.* Under the guidance of that case, the court concluded that the wife's "acquisition and subsequent relinquishment of 'vested' rights in no way renders the 'will controversy' regulation inapplicable." *Citizens & Southern,* 451 F.2d at 228. The court thus held that the widow could only claim the value of the cash received from the son as her marital deduction from federal estate taxes.

These two cases invoked policy to expand the reach of Treas.Reg. § 20.2056(e)–2(d)(1) well beyond its plain language. *Citizens & Southern* defined "the decedent's will, or involving any bequest or devise thereunder" to include transfers of property at death under intestacy statutes or spousal election. Both cases expanded the terms "will contest" or "controversy" to include arms-length negotiations conducted between parties who have potentially adverse positions. Under this view, no litigation is required, much less court adjudication of

various parties' rights to the property of the deceased.

Peggy's rights in the present case to a statutory share of the probate estate and to the joint account do not arise under Thomas' will. It is undisputed that Peggy surrendered this property in settlement not of a will contest,[6] but of a more general controversy over the rightful passing of Thomas' property considered as a whole. By its plain terms, therefore, the will contest regulation is not dispositive here. In the absence of an applicable regulation, we must look directly to the relevant provisions of the Internal Revenue Code.

As previously discussed, section 2056(a) requires that property "pass" from the decedent to his or her surviving spouse to claim the marital deduction. The meaning of this term is dispositive of this appeal. Clearly, transfers of property under spousal election statutes and by survivorship rights concerning joint interests may "pass" within the meaning of the marital deduction provision. *See* 26 U.S.C. § 2056(d)(3) and (5). The issue in this case is whether the *rationale* for the Secretary's regulatory gloss on the passing requirement in the context of a will contest mandates a similar result based on an analysis of the term "passes" in the marital deduction statute.

In *United States Trust Co.,* the court noted that the statutory "passing" requirement is "crucial in qualifying property for a marital deduction." 321 F.2d at 910. It held that "[w]hen the resolution of a controversy between the beneficiaries regarding the decedent's property culminates in an agreement by which the surviving spouse relinquishes property which qualifies for the marital deduction in return for property which does not so qualify, [the will-contest regulation] is applicable." *Id.* In essence, the court defined "passing" to mean property to which the surviving spouse retains her rights after resolution of all disputes concerning the decedent's

---

6. The Government asserts that the settlement was "indirectly" a will contest because the dispute centered on whom Thomas intended to bestow his worldly possessions. This contention is inapplicable to the spousal election because these rights derive from state law *regardless* of Thomas' intent.

property. The court in *Citizens & Southern* agreed with this definition of passing in concluding that "the medium by which the decedent's property passes ... is immaterial." 451 F.2d at 227.

Both courts also properly disregarded the significance of the surviving spouse's acquisition of "vested" rights under state law in determining whether the property "passed" for purposes of the marital deduction. *See United States Trust,* 321 F.2d at 910 (vesting under state law has no bearing on interpretation of federal passing requirement); *Citizens & Southern,* 451 F.2d at 228 ("acquisition and subsequent relinquishment of 'vested' rights in no way renders the 'will controversy' regulation inapplicable"). Indeed, a contrary view arguably would transgress the Supreme Court's holding in *Lyeth v. Hoey,* 305 U.S. 188, 193–94, 59 S.Ct. 155, 158–59, 83 L.Ed. 119 (1938), that federal law controls the incidence of federal taxation of property acquired under state law.[7]

 Unlike the district court and the courts in *United States Trust* and *Citizens*

*& Southern,* we believe the will-contest regulation is inapplicable to property passing to a surviving spouse by statutory election or under the law of survivorship because the regulation speaks only in terms of a controversy involving a bequest or devise under decedent's will. Nonetheless, we find the reasons those courts articulated to broaden the reach of the regulation to be persuasive in our own analysis of what Congress intended by the "passing" requirement in the marital deduction statute. To the extent a surviving spouse surrenders her share of the decedent's property to other beneficiaries not entitled to the marital deduction to avoid litigation concerning her rights, it defies common sense to conclude that this property "passed" to the surviving spouse. Not only is the ultimate recipient of the property a person other than the surviving spouse, but the transfer comprising the settlement could altogether escape taxation applying to gratuitous transfers of wealth.[8]

In creating the marital deduction, Congress envisioned a scheme in which interspousal transfers of wealth would not re-

---

7. Schroeder relies on *First Nat'l Bank v. United States,* 233 F.Supp. 19 (D.Kan.1964), to bolster his argument that the property at issue "passed" when it vested in Peggy and when she obtained possession and control over it. The court in *First National* found the will contest regulation inapplicable to property passing by intestate succession. In construing the statutory passing requirement without regard to the regulation, the court concluded that "qualification for the marital deduction must be determined as of the time of death and not as of a later date established by some subsequent development." *Id.* at 26.

Under most state statutes, property passing by will, intestacy, or by statutory election vests as of the date of death. *See, e.g.,* Okla.Stat. tit. 84 § 175 (testamentary dispositions presumed to vest at testator's death). Under the analysis in *First National,* even property surrendered in a bona fide will contest would, absent the regulation, "pass" to the surviving spouse for purposes of the federal estate tax because it is presumed to vest in the beneficiary as of the date of decedent's death. We agree with the district court in the present case that such a construction of the word "passes" in section 2056(a) is contrary to *Lyeth v. Hoey,* 305 U.S. 188, 192–93, 59 S.Ct. 155, 157–58, 83 L.Ed. 119 (1938). Even assuming that *First National* could be rationalized to be consistent with *Lyeth,* its rule freezing property rights as of the date of death would

preclude any consideration for federal tax purposes of *any* post-mortem settlement of a controversy concerning property of the decedent. However, a controversy involving the *surviving* spouse's entitlement to the *decedent's* property is *by definition* a post-mortem dispute. We believe that this approach is inconsistent with the purpose of the marital deduction.

8. Indeed, Peggy paid no gift tax upon the transfer of the property into the trust and did not report the transfer as a sale on her income tax returns. *See* rec., doc. 43, at exh. B and exh. C. In his Reply Brief, Schroeder justifies Peggy's position concerning gift tax by stating that avoidance of litigation over her rights was appropriate consideration for the transfer. Schroeder's position seems to undercut his assertion in claiming the marital deduction that Peggy transferred property which had already *"passed"* to her. Similarly, for income tax purposes, Peggy claimed no gain or loss on sale when she transferred the joint tenancy account to the trust even though the premise of Schroeder's argument here is that the property "passed" to her prior to transfer. Schroeder's position that Martha and Lou's release of their rights, if any, to property otherwise passing to Peggy constituted valid consideration necessarily implies a recognition that the property in question had not "passed" for practical purposes.

sult in a taxable event. *See* S.Rep. No. 97–144, 97th Cong., 1st Sess. 126, *reprinted in* 1981 *U.S. Code Cong. & Admin.News* 105, 228 ("a husband and wife should be treated as one economic unit for purposes of estate and gift taxes, as they generally are for income tax purposes. Accordingly, no tax should be imposed on transfers between a husband and wife."). The marital deduction was designed to eliminate the "double-taxation" that would result when the same property became subject to tax upon the death of each spouse. Once property passes outside of the interspousal unit, however, this exception no longer applies. Under Schroeder's proposed interpretation, property may exit the spousal unit without *ever* creating a taxable event.[9] Congress clearly did not intend to replace double-taxation with tax avoidance.

Accordingly, we hold that the property comprising Peggy's statutory election and the joint account did not "pass" to her within the meaning of the marital deduction statute. Instead, Peggy surrendered her entitlement to this property in settlement of a bona fide controversy concerning her rights to the property in the decedent's gross estate for federal estate tax purposes. We therefore AFFIRM the district court.