ESTATE OF ZYGMUNT NATKANSKI, DECEASED, KRYSTYNA NATKANSKI, CO-EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Natkanski v. Commissioner
Docket No. 21096-89
United States Tax Court
T.C. Memo 1992-380; 1992 Tax Ct. Memo LEXIS 401; 64 T.C.M. (CCH) 55; July 7, 1992, Filed *401 Decision will be entered under Rule 155. For Petitioner: Thomas S. Chuhak, Steven B. Wolf, and Alan R. Dolinko. For Respondent: James S. Stanis. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined a deficiency in Federal estate tax in the amount of $ 49,207, arising from respondent's partial disallowance of the claimed marital deduction. The sole issue presented for our consideration is whether the marital deduction should be reduced by administrative expenses and death taxes paid by the surviving spouse under an agreement settling her will contest litigation. We hold that only the net amount of the settlement received is includable in computing the marital deduction. [1]
References to decedent are to *402 Zygmunt Natkanski (Zygmunt). References to petitioner or to the Estate are to the Estate of Zygmunt Natkanski. Section references are to the Internal Revenue Code in effect as of the date of decedent's death and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and the stipulation of facts and attached exhibits are incorporated by this reference. Zygmunt Natkanski, a resident of the State of Illinois, died on October 9, 1985, survived by his widow, Krystyna Natkanski (Krystyna), and their minor child, Christopher. Krystyna has a daughter by a previous marriage. Decedent purportedly executed a document entitled "Will of Zygmunt Natkanski" on September 16, 1985. Probate proceedings were commenced and the will was admitted to probate in the Circuit Court of Cook County, Illinois, on October 30, 1985. Leonard Reicin (Reicin), a certified public accountant, and Krystyna were appointed co-executors of the Estate. At the time of filing of the petition herein Krystyna resided in Glenview, Illinois. 1. The Purported Will
Decedent's purported will provided: FIRST: My Executor shall pay all *403 funeral expenses, costs of administration, including ancillary, costs of safeguarding and delivering bequests, and other proper charges against my estate. My Executor shall pay from the residue of my estate all estate and inheritance taxes assessed by reason of my death, except that the amount, if any, by which the estate and inheritance taxes shall be increased as a result of the inclusion of property in which I may have a qualifying income interest for life or over which I may have power of appointment shall be paid by the person holding or receiving that property. Interest and penalties concerning any tax shall be paid and charged in the same manner as the tax. I waive for my estate all rights of reimbursement for any payments made pursuant to this article. My executor's selection of assets to be sold to make the foregoing payments or to satisfy any pecuniary legacies, and the tax effects thereof, shall not be subject to question by any beneficiary. My Executor shall make such elections under the tax laws as my Executor deems advisable, without regard to the relative interests of the beneficiaries. No adjustment shall be made between principal and income or in the relative *404 interests of the beneficiaries to compensate for the effect of elections under the tax laws made by my Executor or by the Trustee. Once all administration expenses and proper charges against the Estate were paid, the will directed that a portion of decedent's estate equal to the "smallest pecuniary amount which, if allowed as a Federal estate tax marital deduction, would result in the least possible Federal estate tax being payable by reason of [his] death" be placed in trust (hereinafter referred to as Trust A or the marital trust) for Krystyna. In determining the pecuniary amount, the will provided that the executor "shall consider the credit for state death taxes only to the extent those taxes are not thereby incurred or increased, and shall assume that all payments and legacies under the preceding articles of this will have been made or satisfied in full." The trustee of Trust A was to pay all income to Krystyna during her lifetime. The trustee had the discretion to invade the trust principal for Krystyna's health, maintenance, and best interests. In addition, the terms of the will gave Krystyna a power of appointment and provided that if she did not exercise it, the principal *405 and accrued and undistributed income of Trust A was to be added to Trust B. The remainder of decedent's estate was to be held in a separate trust (hereinafter referred to as Trust B or the residuary trust). With respect to Trust B, decedent's will, in pertinent part, is as follows: FIFTH: All the residue of my estate and property wherever situated, including lapsed legacies and devises, but expressly excluding any property over which I may now or hereafter have a power of appointment, I give to LEONARD REICIN and KAZIMIERZ NATKANSKI as Trustees. The Trust shall be designated "Trust B" and shall be held and disposed of as follows: A. If my wife survives me then commencing with my death, and continuing until her death or remarriage, the Trustee shall pay any part or all of the net income from Trust B to any one or more of my wife, my son and the descendants of my son from time to time living in equal or unequal portions according to their respective needs, best interests and welfare, or accumulate the same and add it to principal as the Trustee deems advisable. * * * E. After the death or remarriage of my wife and after my son has reached any one or more of the following *406 ages, he may withdraw from the principal of the trust at any time or times not to exceed in the aggregate: One-half (1/2) in value after twenty-five (25) years of age; The balance after thirty (30) years of age. Upon Krystyna's death, the principal and accrued and undistributed income of Trust A was to be added to Trust B. Approximately 1 week after her husband's death, Krystyna consulted a lawyer, Joan Grant (Grant), who explained the provisions of the will to her. Krystyna also discussed the will and her bequests under the will with Reicin. Krystyna was unhappy that her bequest under the will was to be held in trust rather than distributed outright. Krystyna was also displeased with other provisions of the will. While examining the will sometime in January, Krystyna began to suspect that the signature was not decedent's. Prior to that time she did not question the authenticity of the signature. On January 18, 1986, Krystyna engaged the services of a handwriting expert to verify the signature. In his report the handwriting expert stated that, after having compared the signature on the purported will with the 34 samples of decedent's signature provided by Krystyna, it *407 was his opinion that the signature on the will was not that of Zygmunt Natkanski. 2. The Will Contest
On April 25, 1986, after further consultation with Grant and in the bona fide belief that the will was not genuine, Krystyna filed a complaint in the Estate's probate proceedings naming Reicin, Christopher Natkanski, and Kazimierz Natkanski as defendants and alleging that decedent's will was invalid and void. In seeking to have the will disregarded Krystyna alleged: (Count I) The will was invalid for lack of proper execution and for lack of the requisite number of credible witnesses; (Count II) decedent's signature was a forgery and Kazimierz Natkanski had inserted his name as trustee intending to receive a financial benefit, and as a result of the alleged forgery and alteration, Krystyna was fraudulently deprived of her inheritance; (Count III) at the time of the making of the purported will, decedent was of unsound mind and memory and thus lacked capacity to execute a last will and testament; (Count IV) decedent lacked the degree of mental capacity necessary to make a valid trust declaration and the trust provisions were the product of undue influence; (Count V) Kazimierz *408 Natkanski fraudulently influenced decedent to insert his name as trustee or, in the alternative, inserted his own name as trustee intending that he would receive a financial benefit therefrom; (Count VI) Kazimierz Natkanski maliciously interfered with Krystyna's expectancy of her inheritance; and (Count VII) Kazimierz Natkanski abused his confidential relationship with decedent, thereby wrongfully denying Krystyna her inheritance and causing her to suffer extreme mental distress. After commencement of the will contest action, settlement negotiations began between the parties. During the course of the settlement negotiations Krystyna was represented by Grant. Reicin, who had a fiduciary obligation to vigorously defend and uphold the will, was also represented by counsel. The negotiations culminated in a settlement agreement which was presented to and approved by the Circuit Court of Cook County, Illinois, on September 26, 1986. Krystyna was represented at this proceeding by Grant, Burton F. Grant, and Barry Feinberg. Reicin, as executor, was represented by Ben Steiner, and Christopher was represented by Walter P. Dahl, guardian ad litem. 3. The Family Settlement Agreement
*409 Before reciting the distribution of property under the settlement, the preamble [2] to the family settlement agreement states as follows: WHEREAS, the parties hereto believe that it would be in the best interests of the estate and the beneficiaries of the estate to avoid costly, expensive and time consuming litigation and to settle and compromise the issues and disputes which have arisen between them growing out of Testator's Will; and WHEREAS, it is the public policy of this State to encourage settlement agreements in contested probate matters to avoid dissension and conflict within the family. NOW, THEREFORE, in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows: [Emphasis added.] The agreement further provides: The parties hereto acknowledge that this Agreement is executed for the purpose of settling and compromising a real and genuine dispute among them * * *. *410 Under the terms of the settlement agreement, Krystyna received her bequest outright and free of trust. The agreement provided that the property which was to be distributed to Krystyna was first to be used to pay all administration expenses and death taxes. The transfer to her of an outright bequest rather than the trust interest provided under the will deprived Christopher of any benefit from Trust A which could have spilled over into Trust B. The terms of the will with respect to Trust B were also altered by the settlement agreement. Trust B was to be funded in the full amount of $ 400,000, with Krystyna retaining her discretionary right to income from Trust B; however, the corpus could be distributed to Christopher upon his 25th and 30th birthdays whether or not Krystyna was then still alive. OPINION We must decide the amount of the marital deduction which the Estate is entitled to claim on its Federal estate tax return. Respondent contends that the amount is limited to the value of the property passing to Krystyna under the terms of the family settlement agreement. Respondent argues that, in computing the estate tax marital deduction, the property passing to Krystyna must *411 be reduced in value by attorney's fees, executor's commissions, and by Federal and State death taxes (including interest payable thereon) which, under the terms of the settlement agreement, were required to be paid from the surviving spouse's share of her settlement of the Estate litigation. Petitioner contends that the marital deduction should not be reduced by these amounts because Krystyna's payment of these expenses out of her share of the Estate constituted a gift to her son. Under section 2056(a)[3] *412 a marital deduction is allowed for all property includable in the gross estate which "passes or has passed from the decedent to his surviving spouse". Section 2056(c)[4] sets forth the circumstances under which property will be considered as passing from the decedent to any person, and provides in part that property will be deemed to "pass" if it is received by bequest, devise, or inheritance from the decedent. However, subsequent interpretive regulations provide that property surrendered by the surviving spouse in settlement of a controversy over a decedent's will is constructively deemed not to have "passed" to such spouse. Sec. 20.2056(e)-2(d)(1), Estate Tax Regs. This regulation is consistent *413 with the legislative history of the Code section: If the surviving spouse takes under the decedent's will, the interest passing to her is determined from the will. In this connection proper regard should be given to interpretations of the will rendered by a court in a bona fide adversary proceeding. If as a result of a controversy involving a bequest or devise to the surviving spouse, such spouse assigns or surrenders an interest in property pursuant to a compromise agreement in settlement of such controversy, the amount so assigned or surrendered is not deductible as an interest passing to such spouse. * * * S. Rept. 1013 (Part 2) 80th Cong., 2d Sess. 4 (1948), 1948-1 C.B. 285, 334. This statutory and regulatory scheme is premised upon the fundamental rule that State law is determinative of the property interest held and Federal law is determinative of the tax burden on the property. United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985); Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Schroeder v. United States, 924 F.2d 1547 (10th Cir. 1991), affg. per curiam 696 F. Supp. 1426 (W.D. Okla. 1988). *414 Thus, Federal law controls whether property "passes" from the estate of the deceased individual for purposes of Federal estate tax. In providing for the marital deduction, Congress intended that for estate tax purposes, interspousal transfers of wealth would not result in a taxable event. See S. Rept. 97-144, at 126 (1981), 1981-2 C.B. 412, 461. The marital deduction was designed to eliminate the "double taxation" that could result when the same property became subject to tax upon the death of each spouse. Once property passes outside of the interspousal relationship, the marital deduction would no longer be available to reduce the incidence of estate tax. In applying section 20.2056(e)-2(d)(1), Estate Tax Regs., courts have consistently limited the marital deduction to the value of property actually received by the surviving spouse in settlement of a will controversy. See Martin v. United States, 923 F.2d 504 (7th Cir. 1991); Citizens & Southern National Bank v. United States, 451 F.2d 221 (5th Cir. 1971); Estate of Davenport v. Commissioner, 38 T.C. 670 (1962), affd. sub nom. United States Trust Co. of New York v. Commissioner, 321 F.2d 908 (2d Cir. 1963); *415 Estate of Tebb v. Commissioner, 27 T.C. 671 (1957). Among the factors courts have considered in determining whether property was surrendered in settlement of a "controversy" are: (1) Whether the settlement agreement was made in good faith as a result of arm's-length negotiation; (2) whether in negotiating the terms of the settlement the parties were represented by counsel; (3) whether the parties' interests or positions were potentially adverse; and (4) the nature and merit of the claims to the property surrendered. See Citizens & Southern National Bank v. United States, supra at 225-226; Estate of Barrett v. Commissioner, 22 T.C. 606, 611 (1954). [5]
The facts of this case demonstrate that a genuine controversy existed regarding decedent's will and that the parties, upon the advice of counsel and with the probate court's approval, resolved that dispute by entering *416 into a binding settlement agreement. The settlement agreement which was ultimately entered into was the product of arm's-length negotiations spanning several months with proposals back and forth between the parties. The settlement agreement acknowledges the existence of a real and genuine dispute between the parties. Petitioner argues that rather than surrendering or assigning a property interest as part of the negotiated settlement, Krystyna made a gift to her son by voluntarily assuming the obligation to pay administration expenses and death taxes. It is petitioner's position, therefore, that this case is distinguishable from cases in which the marital deduction was limited pursuant to section 20.2056(e)-(2)(d)(1), Estate Tax Regs. In support of their respective positions, the parties devoted considerable attention to discerning which source of the Estate's funds was to be used to pay estate taxes under the will. Petitioner contends that funds from the residuary trust were to be used, while respondent contends that the marital trust was charged with these obligations. If respondent is correct, then Krystyna's agreement to pay these obligations under the settlement agreement *417 would not constitute a gift because she was not then paying the debts of another. If, however, under the will these obligations were to be paid by the residuary trust, as petitioner alleges, the evidence must demonstrate that Krystyna undertook this obligation with donative intent rather than as consideration in resolution of the will contest. The facts of this case do not support Krystyna's argument that she made a gift. Pursuant to section 25.2511-1(g)(1), Gift Tax Regs., the gift tax is not applicable to a transfer for full and adequate consideration in money or money's worth, or to ordinary business transactions, described in section 25.2512-8, Gift Tax Regs. [6] In applying these regulations within the context of settlements arising from family disputes, the factors this Court has considered in determining whether a gift was made include: (1) Whether a genuine controversy existed between the parties; (2) whether the parties were represented by and acted upon the advice of counsel; (3) whether the parties engaged in bona fide arm's-length negotiations; (4) whether the value of the property involved was substantial; and (5) whether the settlement was motivated by the parties' *418 desire to avoid the uncertainty and expense of litigation. See Estate of Friedman v. Commissioner, 40 T.C. 714, 720 (1963); Beveridge v. Commissioner, 10 T.C. 915, 918 (1948). [7]
*419 The facts of this case demonstrate, and we have so found, that a genuine controversy existed regarding decedent's will and the parties were represented by and acted upon the advice of counsel. The language of the settlement agreement includes the unmitigated statement that the parties settled their dispute by entering into the agreement in order to avoid costly and time-consuming litigation and avoid dissension and conflict within the family, and did so for good and valuable consideration. Moreover, Krystyna's testimony does not reveal contemporaneous donative intent at the time the settlement agreement was entered into. She testified that it was only after receipt of respondent's notice of deficiency and after consulting her attorney, Mr. Chuhak, that the payment of expenses and fees from her share was characterized as a gift to her son. The fact that the gift tax return was filed more than 2 years after the settlement agreement and subsequent to petitioner's being advised by respondent of an estate tax deficiency does not, ipso facto, show that at the time of settlement Krystyna intended to make a gift to her son. To accommodate additional expenditures of the Estate, if any, *420 Decision will be entered under Rule 155. Footnotes
1. In the statutory notice of deficiency, respondent also reduced the marital deduction by the outstanding mortgage indebtedness of certain probate property passing to the surviving spouse. This determination is not in dispute.↩
2. Item 1 of the settlement agreement provides: "The preambles set forth above are hereby made a part of this Agreement."↩
3. Sec. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.↩
4. (c) Definition. -- For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if -- (1) such interest is bequeathed or devised to such person by the decedent; (2) such interest is inherited by such person from the decedent; (3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent; (4) such interest has been transferred to such person by the decedent at any time; (5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship; (6) the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or (7) such interest consists of proceeds of insurance on the life of the decedent receivable by such person.↩
5. See also Estate of Suzuki v. Commissioner, T.C. Memo. 1991-624↩.
6. Sec. 25.2512-8, Gift Tax Regs., provides in part: Transfers reached by the gift tax are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts but embrace as well sales, exchanges, and other dispositions of property for a consideration to the extent that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from donative intent), will be considered as made for an adequate and full consideration in money or money's worth↩. [Emphasis added.] 7. See also Estate of Noland v. Commissioner, T.C. Memo. 1984-209; Farrell v. Commissioner↩, a Memorandum Opinion of this Court dated Mar. 19, 1954.